**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEIDRE DUNHAM, on behalf of herself and a class of similarly situated persons,<br><br>         Plaintiff,<br><br>v.<br><br>SITUSAMC HOLDINGS CORPORATION,<br><br>         Defendant. | CASE NO. :<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Deidre Dunham, individually and on behalf of all others similarly situated ("Plaintiff"), brings this action against Defendant SitusAMC Holdings Corporation ("SitusAMC" or "Defendant") seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

### I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information. Moreover, the release, disclosure, and publication of private medical information,

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. LAWYER 28- 35 (May 2014), https:// https://articlegateway.com. (Last accessed June 13, 2024).

such as diagnosis, medications and prescriptions can lead to sophisticated and costly insurance fraud, as well as embarrassment, humiliation and blackmail.

2.    Defendant SitusAMC is a real estate financial services provider. Defendant SitusAMC is a leading provider of technology, services and advisory solutions for the real estate finance industry. Defendant's clients include major U.S. banks and mortgage lenders such as JPMorgan Chase, Citigroup and Morgan Stanley.

3.    On or about November 12, 2025, Defendant learned that it had been the subject of a cyberattack.

4.    On November 22, 2025, Defendant issued an official statement stating it had determined that certain information from its systems had been compromised, including accounting records and legal agreements.[2]

5.    On November 23, 2025, the New York Times reported that the FBI is in contact with the groups linked to the cyberattack.[3]

6.    Upon information and belief, customers are required to entrust Defendant and Defendant's customers with sensitive, non-public Private Information, without which Defendant could not perform its regular business activities. Defendant retains this information for at least many years and even after the company relationship has ended.

7.    By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

8.    Defendant failed to adequately protect Plaintiff's and Class Members' Private Information. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect Plaintiff's and Class Members' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members'

---

[2] https://www.situsamc.com/databreach (last accessed November 23, 2025)

[3] https://www.nytimes.com/2025/11/22/business/bank-data-hack.html (last accessed November 23, 2025)

Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk of identity theft and fraud to victims of the Data Breach will remain for their respective lifetimes.

9.      In breaching its duties to properly safeguard Plaintiff's and Class Members' Private Information and give them timely, adequate notice of the Data Breach's occurrence, Defendant's conduct amounts to negligence and/or recklessness and violates federal and state statutes.

10.      Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

11.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

12.      Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data

Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

13.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## II.     JURISDICTION, VENUE, AND CHOICE OF LAW

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

15.     This Court has personal jurisdiction over Defendant SitusAMC because its principal place of business is located in the State of New York, it has sufficient minimum contacts with this district, and it has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant SitusAMC resides in this district, Defendant conduct substantial business within this District, and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.     PARTIES

### A.     Plaintiff

17.     Plaintiff Deidre Dunham is a citizen of and is domiciled in the state of Texas.

18.     Plaintiff provided confidential and sensitive PII to Defendant in connection with Defendant' provision of their services. Defendant obtained and continue to maintain Plaintiff's PII and have a legal duty and obligation to protect that PII from unauthorized access and disclosure.

19.     Plaintiff would not have entrusted her PII to Defendant had she known that Defendant failed to maintain adequate data security.

20.     Plaintiff and other class members received a notice from Defendant, stating that her information was compromised (the "Notice Letter").

21.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

22.     As a result of the Data Breach and the release of her PII, which she expected Defendant to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.     Defendant**

23.     Defendant SitusAMC Holdings Corporation is a New York Corporation with its principal place of business at Tower 49, 12 East 49th Street, New York, New York 10017.

## IV.     FACTUAL BACKGROUND

**A.     Defendant failed to adequately protect customer data, resulting in the Data Breach.**

24.     Defendant was a victim of a cybersecurity attack that involved unauthorized removal of information from their systems. In response, Defendant launched an investigation to determine the nature and scope of the Data Breach, and issued a statement on November 22, 2025.

25.     Omitted from the November 22, 2025 statement were the identity of the cybercriminals who perpetrated this Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date,

these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

26.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

27.     Despite Defendant's intentional opacity about the root cause of this incident, several facts may be gleaned from the statement, including: a) that this Data Breach was the work of cybercriminals; b) unauthorized party gained access to a database containing client data.

28.     To be clear — there are numerous issues with Defendant's Data Breach, but the deficiencies in the statement exacerbate the circumstances for victims of the Data Breach: (1) Defendant fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that Defendant continues to maintain is secure; and (2) Defendant fails to state how the breach itself occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

29.     Moreover, in its statement, Defendant failed to specify whether it undertook any efforts to contact the Class Members whose data was accessed and acquired in the Data Breach to inquire whether any of the Class Members suffered misuse of their data, whether Class Members should report their misuse to Defendant, and whether Defendant set up any mechanism for Class Members to report any misuse of their data.

30.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

31.     Plaintiff further believes that his Private Information and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

32.     As a condition of providing services, Defendant receive, create, and handle the PII of Plaintiff and Class Members.

33.     Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information and keep it confidential.

34.     Due to the sensitivity of the PII that Defendant handle, Defendant are aware of their critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

35.     By obtaining, collecting, and storing Plaintiff's and Class Members' PII, Defendant assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

36.     Despite the existence of these duties, Defendant failed to implement reasonable data security measures to protect the information with which it was entrusted, and ultimately allowed nefarious third-party hackers to compromise Plaintiff's and Class Members' PII.

**B.      Defendant Failed To Comply With Regulatory Guidance And Industry-Standard Cybersecurity Practices.**

37.     PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[4]

38.     Defendants' data security failure stems from its failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII.

39.     At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

---

[4] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Jan. 6, 2025).

40.     Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

41.     The FTC recommends:

- limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
- monitoring activity logs for signs of unauthorized access to customer information.[5]

42.     The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[6]

43.     In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[7] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks;

---

[5] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 13, 2024).
[6]     Federal Trade Commission, *Start With Security* at 2, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Jan. 6, 2025).
[7] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 13, 2024).

understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

44.     The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

45.     The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

48.     According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency

between 2019 and 2020.[8] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[9]

49.    On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and imminent cybercrime threat to U.S. hospitals and healthcare providers."[10] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS), and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect their networks from these threats."[11]

50.    Defendant was aware of their obligations to protect customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendant was at all times fully aware of obligation to protect the PII of Defendant's customers because of its status as leading financial services provider. Defendant was also aware of the significant repercussions if they failed to do so because Defendant collected PII from millions of consumers and knew that this PII, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

51.    Based upon the known details of the Data Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

---

[8] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf  (last visited Jan. 6, 2025).

[9] *2021 DBIR Master's Guide*, VERIZON, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visited June 13, 2024).

[10] *Ransomware Activity Targeting the Healthcare and Public Health Sector*, JOINT CYBERSECURITY ADVISORY, https://us-cert.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited Jan. 15, 2025).

[11] *Id.*

**C.    The Data Breach puts Plaintiff and Class Members at increased risk of fraud and identity theft.**

52.    Defendant's failure to keep Plaintiff's and Class Members' PII secure has severe ramifications. Given the sensitive nature of the PII stolen in the Data Breach—names, addresses, zip codes, phone numbers, email addresses, dates of birth, Social Security Numbers—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff and Class Members have suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

53.    There is little doubt that consumers PII from the Data Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use PII to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII to open new financial accounts, open new utility accounts, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[12]

54.    Further, identity thieves often wait months or years to use PII obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and identifies the victims as Defendant' customers materially increases the risk to Plaintiff and the Class.

55.    The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[13] Moreover, there is often significant lag time between when a person suffers harm due to

---

[12] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

[13] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited Jan. 6, 2025).

theft of their PII and when they discover the harm. Plaintiff and Class Members will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

56.    Plaintiff and Class Members have also realized harm in the lost or reduced value of their PII. Defendant admits the PII compromised in the Breach is valuable. Defendant collects, retains, and uses Plaintiff's and Class Members' PII to earn revenue. Plaintiff's and Class Member's PII is not only valuable to Defendant, but Plaintiff and Class Members also place value on their PII based on their understanding that their PII is a financial asset to companies who collect it.[14]

57.    Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiff's and Class Member's PII that was permitted without authorization by Defendant. This market value for access to PII can be determined by reference to both legitimate and illegitimate markets for such information.

58.    Moreover, Plaintiff and Class Members value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided their PII and payment card information, or paid the same prices for Defendant' goods and services had they known Defendant did not implement reasonable security measures to protect their PII.[15] Customers reasonably expect that

---

[14] *See, e.g.*, Ponemon Institute, LLC, *Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers* at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or commodities" and valuing, as but one example, their Social Security number at \$55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html.

[15] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html (last accessed June 13, 2024) (noting approximately 50% of consumers consider data security to be a main or important consideration when

the payments they make to Defendant and those made on their behalf through their financial services firms, incorporate the costs to implement reasonable security measures to protect customers' PII. And because consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiff and Class Members did not receive the benefit of their bargain with Defendant because they paid for services they expected but did not receive.

59.    Given Defendant's failure to protect their PII, Plaintiff and Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII remains in Defendant' possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

60.    In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) loss of value of their PII; (iv) the lost value of unauthorized access to Plaintiff's and Class Members' PII permitted by Defendant; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (vi) Defendant' retention of profits attributable to Plaintiff's and Class Members' PII that Defendant failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to Defendant for goods and services purchased, as Plaintiff and Class Members reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case; and (x) nominal damages.

---

making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

## V.    CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed Nationwide Class defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

62.    **Numerosity and Ascertain ability:** Plaintiff does not know the exact size of the Class or identity of the Class members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least hundreds of thousands of individuals dispersed throughout the United States. The number of Class members is so numerous that joinder of all Class members is impracticable. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendant.

63.    **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a.  whether Defendant engaged in the conduct alleged herein;

b.  whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff and Class members' PII;

c.  whether Defendant timely, accurately, and adequately informed Plaintiff and Class members that their PII had been compromised;

d.  whether Defendant breached their legal duties by failing to protect the PII of Plaintiff and Class members;

e.  whether Defendant acted reasonably in securing the PII of Plaintiff and Class members;

f.  whether Plaintiff and Class members are entitled to injunctive relief; and

g.  whether Plaintiff and Class members are entitled to damages and equitable relief.

64.    **Typicality:** Plaintiff's claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf

of herself and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and Class members arise from the same operative facts and are based on the same legal theories.

65.    **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and her counsel.

66.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant' wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE
### NEGLIGENCE

67.    Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

68.    Defendant owed a duty to Plaintiff and Class members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things,

designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class members' information was adequately secured from unauthorized access.

69.     Defendant's Privacy Policies acknowledged Defendant' duty to adequately protect Plaintiff's and Class members' PII.

70.     Defendant owed a duty to Plaintiff and Class members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class members' PII.

71.     Defendant also had a duty to only maintain PII that was needed to serve customer needs.

72.     Defendant owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff and Class members' PII.

73.     Defendant also had independent duties under Plaintiff's and Class members' state laws that required Defendant to reasonably safeguard Plaintiff's and Class members' PII, and promptly notify them about the Data Breach.

74.     Defendant had a special relationship with Plaintiff and Class members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and Class members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions. Moreover, Defendant was capable of protecting its networks and systems, and the PII they stored on them, from unauthorized access.

75.     Defendant breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class members' PII.

76.     But for Defendant's breach of duties, including the duty to use reasonable care to protect and secure Plaintiff's and Class members' PII, Plaintiff's and Class members' PII would not have been accessed by unauthorized parties.

77.     Plaintiff and Class members were foreseeable victims of Defendant's inadequate data security practices. Defendant knew or should have known that a breach of its data security systems would cause damage to Plaintiff and Class members.

78.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class members' PII would result in unauthorized access to Defendant's networks, databases, and computers that stored or contained Plaintiff's and Class members' PII.

79.     As a result of Defendant's negligent failure to prevent the Data Breach, Plaintiff and Class members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII has also diminished the value of the PII.

80.     The harm to Plaintiff and Class members was a proximate, reasonably foreseeable result of Defendant' breaches of the aforementioned duties.

81.     Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## <u>COUNT TWO</u>
## NEGLIGENCE PER SE

82.     Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

83.     Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

84.     In addition, under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class members' PII.

85.    Defendant breached these duties to Plaintiff and Class members, under the FTCA and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

86.    Plaintiff and Class members were foreseeable victims of Defendant' violations of the FTCA and state data security statutes. Defendant knew or should have known that the failure to implement reasonable measures to protect and secure Plaintiff's and Class members' PII would cause damage to Plaintiff and Class members.

87.    Defendant's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

88.    But for Defendant's violation of the applicable laws and regulations, Plaintiff's and Class members' PII would not have been accessed by unauthorized parties.

89.    As a result of Defendant's failure to comply with applicable laws and regulations, Plaintiff and Class members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII has also diminished the value of the PII.

90.    The harm to Plaintiff and the Class members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

91.    Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
### GROSS NEGLIGENCE

92.    Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

93.     Plaintiff and Class members entrusted Defendant with highly-sensitive and inherently personal private data subject to confidentiality laws.

94.     In requiring, obtaining and storing Plaintiff's and Class members' PII, Defendant owed a duty of reasonable care in safeguarding the PII.

95.     Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class members' PII were secured from unauthorized access.

96.     Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not reasonable given the sensitivity of the Plaintiff's and Class members' private data and the known vulnerabilities of Defendant's systems.

97.     Defendant did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

98.     Upon learning of the Data Breach, Defendant should have immediately disclosed the Data Breach to Plaintiff and Class members, credit reporting agencies, the Internal Revenue Service, financial institutions, and all other third parties with a right to know and the ability to mitigate harm to Plaintiff's and Class members as a result of the Data Breach.

99.     Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class members' PII were secured from unauthorized access, Defendant ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

100.    Defendant's behavior establishes facts evidencing a reckless disregard for Plaintiff's and Class members' rights.

101.    Defendant, therefore, was grossly negligent.

102.    Defendant's negligence also constitutes negligence per se.

103.    The negligence is directly linked to injuries.

104.    As a result of Defendant's reckless disregard for Plaintiff's and Class members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies,

procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII has also diminished the value of the PII.

105.    The harm to Plaintiff and the Class members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

106.    Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR
## BREACH OF IMPLIED CONTRACTS

107.    Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

108.    Plaintiff and Class members were required to provide their PII to obtain services from Defendant. Plaintiff and Class members entrusted their PII to Defendant in order to obtain services from them.

109.    By providing their PII, and upon Defendant' acceptance of such information, Plaintiff and Class members on one hand, and Defendant on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Defendant were obligated to take reasonable steps to secure and safeguard that information.

110.    Defendant had an implied duty of good faith to ensure that the PII of Plaintiff and Class members in its possession was only used in accordance with their contractual obligations.

111.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class

members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Defendant expressly assented to these terms in its Privacy Policies as alleged above.

112.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

113.    Plaintiff and Class members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant and/or providing the PII required by Defendant.

114.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class members' PII, resulting in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class members.

115.    Further, on information and belief, Defendant has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Defendant. These Class members are unaware of the potential source for the compromise of their PII.

116.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

117.    As a result of Defendant's conduct, Plaintiff and Class members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

118.    Neither Plaintiff, nor Class members, nor any reasonable person would have provided their PII to Defendant had Defendant disclosed that their security was inadequate or that they did not adhere to industry-standard security measures.

119.    As a result of Defendant's breach, Plaintiff and Class members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

120.    As a result of Defendant's breach, Plaintiff and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiff and the Class members have suffered actual identity theft and the ability to control their PII.

121.    Accordingly, Plaintiff and Class members have been injured as a result of Defendant' breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT FIVE
## UNJUST ENRICHMENT

122.    Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

123.    Plaintiff and Class members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

124.    Defendant collected, maintained, and stored the PII of Plaintiff and Class members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class members.

125.    The money that Plaintiff and Class members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

126.    As a result of Defendant' failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class members paid for, and the services they received without reasonable data privacy.

127.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class members paid for.

128.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT SIX
## DECLARATORY JUDGMENT

129.    Plaintiff incorporates the allegations in Paragraphs 1-66, as if fully set forth herein.

130.    Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se and gross negligence, and violations of various state and federal statutes.

131.    Defendant failed to fulfill their obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

132.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

133.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII of Plaintiff and the Class. Defendant maintains that its security measures were—and still are— reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII of Plaintiff and the Class.

134.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must

implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

## VII.    PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the proposed Nationwide Class, requests that the Court:

a.       Certify this case as a class action, appoint Plaintiff as a class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b.       Find that Defendant breached its duty to safeguard and protect the PII of Plaintiff and Class members that was compromised in the Data Breach;

c.       Award Plaintiff and Class members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

d.       Award equitable, injunctive, and declaratory relief as may be appropriate;

e.       Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.       Award pre-judgment and post-judgment interest as prescribed by law; and

g.       Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated November 26, 2025

Respectfully submitted,

*/s/ Andrew J. Fuller*
Andrew J. Fuller

Thomas E. Loeser*
Andrew J. Fuller (NY Bar No. 5585500)
**COTCHETT, PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
tloeser@cpmlegal.com
afuller@cpmlegal.com

Mark K. Svensson
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel.: (202) 975-0468
msvensson@milberg.com

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
gklinger@milberg.com


*Pro Hac Vice Forthcoming*

**Counsel for Plaintiff and the Proposed Class**